IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


```
------------------------------------------------   :
MARGARET BRADY,                                    : CASE NO. 1:05 CV 0007
                                                   :
                                 Plaintiff,        :
                                                   :
                                                   :
                     -vs-                          :
                                                   : ORDER AND OPINION GRANTING
JOHN POTTER, POSTMASTER                            : DEFENDANT'S MOTION FOR
UNITED STATES POSTAL SERVICE,                      : SUMMARY JUDGMENT
                                                   :
                                 Defendant.        :
                                                   :
------------------------------------------------   :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        This matter is now before the Court on the defendant's motion for summary

judgment (Docket No. 22), the defendant's motion to dismiss for insufficient service of

process (Docket No. 32), and the plaintiff's motion to strike "Declaration of Lawrence C.

Zoloty" (Docket No. 28).

        Plaintiff Margaret Brady filed a complaint against her former employer the United

States Postal Service ("USPS"), alleging a claim of discrimination and retaliation in

violation of the Family and Medical Leave Act, 29 U.S.C. § 2615 et seq. ("FMLA") and a

claim of discrimination on the basis of a perceived or actual disability in violation of the

Rehabilitation Act, 29 U.S.C. § 701 et seq. ("Rehabilitation Act").  (Docket No. 12).  The

USPS filed a motion for summary judgment on 23 February 2006.  (Docket No. 22).

The plaintiff responded in opposition (Docket No. 27), and the defendant replied (Docket

No. 30).

        The Court will address the plaintiff's motion to strike as a preliminary matter.  The

defendant submitted "Declaration of Lawrence C. Zoloty" and eleven accompanying exhibits in support of its motion for summary judgment. (Docket No. 22, Ex. 7). The plaintiff motions the Court to strike from the record Mr. Zoloty's Declaration and accompanying exhibits because Mr. Zoloty was never identified as a person having discoverable information, and, therefore, the plaintiff was without opportunity to cross-examine him. (Docket No. 28). The defendant objects, contending that Mr. Zoloty's Declaration offers nothing more than a compilation of information from Equal Employment Opportunity Commission ("EEOC") records and the plaintiff's personnel file, and that such information was provided to Ms Brady during discovery. (Docket No. 29). The Court will deny the plaintiff's motion to strike, but notes that it will disregard any of Mr. Zoloty's testimonial evidence and will only consider the documentary evidence attached as exhibits, as those documents were made available to the plaintiff in discovery.

For the reasons set forth below, the Court will grant the defendant's motion for summary judgment and dismiss as a matter of law all claims asserted by the plaintiff against the defendant. The defendant's motion to dismiss will be denied as moot.

## I.  FACTUAL BACKGROUND

Plaintiff Margaret Brady worked for the USPS from 5 December 1998 until her resignation on 14 October 2004. (Docket No. 27 pp. 2, 11). The USPS is an employer covered by the Rehabilitation Act and the FMLA. Ms Brady held the position of part-time flexible distribution clerk, which involved sorting and distributing mail. Id. at 2. During the first few years of her employment, Ms Brady's attendance record was near

2

perfect.  (Docket No. 27 p. 3).

Ms Brady was diagnosed with type 1 diabetes in 1983.  Id. at 2.  This form of diabetes requires insulin injections and keeps Ms Brady tethered to an insulin pump, a type of intravenous therapy that provides her with a continuous flow of insulin throughout the day.  (Docket No. 25, Brady Tr. p. 12). In addition to her insulin therapy, Ms Brady's diabetic condition requires her to stay physically fit, maintain a strict diet, and monitor her blood sugar level.  (Docket No. 27 p. 2).  Ms Brady states that, "[n]otwithstanding her diabetic condition, she excelled as a postal employee."  (Docket No. 27 p. 3).

The USPS policy governing employee FMLA leave for a serious health condition requires employees to make their FMLA requests in writing and to support their requests with a medical certificate from the employee's health care provider.  (Docket No. 22, Kobelka Decl., Ex. 1).  The medical certificate must include whether the employee is presently incapacitated; the likely duration and frequency of future episodes of incapacity; whether it is necessary for the employee to work an intermittent or less than full work schedule; and, the nature, regimen, and estimated dates of forthcoming medical treatments.[1]  Id.  If the employee neglects to supply the required documentation, the employee must supply such information within fifteen days of receiving notice that her FMLA request was incomplete.  Id.  The USPS policy further provides that employees are required to provide recertification periodically.  Id.

_____

[1] The USPS uses the Department of Labor FMLA medical certification form, which defines incapacity as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment, therefor, or recovery therefrom."  (Docket No. 22, Kobelka Decl., Ex. 2).

3

On 9 January 2001, Ms Brady suffered a diabetic episode while at work.  (Docket No. 12 ¶ 23).  Ms Brady states that she became extremely disoriented and fell twice, once at her work station and again in the bathroom.  (Docket No. 27 p. 3).  Her co-workers called 911, and EMS transported Ms Brady to St. John West Shore Hospital in Westlake, Ohio.  Id.  Ms Brady was not admitted overnight for this incident, however, she did miss work the following day and then returned to her normal schedule on 11 January 2001.  (Docket No. 12 ¶ 23).  On the day she returned to work, Ms Brady submitted an FMLA request, reporting that she would require some leave from work, "depending on symptoms, no more than one day off work," and that her condition was not incapacitating.  (Docket No. 22, Davis Decl., Ex. 1).  On 29 January 2001, the USPS notified Ms Brady that the information provided in her medical certificate indicated she was not eligible for FMLA leave because she was not incapacitated and that her FMLA request would be denied if she did not resubmit a completed certificate which states the requisite criteria for FMLA leave.  (Docket No. 22, Davis Decl., Ex. 2).  Ms Brady did not resubmit her medical certificate.

Two months later, on 22 March 2001, Ms Brady suffered another diabetic episode while at work.  Ms Brady recalled it was hot at her workstation that morning, and she had opened the vestibule doors to the outside to increase the room's circulation and lower the temperature at her workstation.  (Docket No. 2s, Ex. 9, Brady Dep. pp. 27-28).  USPS supervisor Jack Thomas closed the doors soon after, telling Ms Brady that other employees were cold.  Id. at 27.  Ten to fifteen minutes later, Ms Brady began to feel sick, so she went to the break room to check her blood sugar level and discovered that it was low, approximately 42.  Id. at 29.  Ms Brady sought the help of the

4

union steward working that shift, who agreed to deliver to Mr. Thomas Ms Brady's Form 3971, "Request for or Notification of Absence."  Id. at 29-30.  Ms Brady recalled Mr. Thomas was very angry with her for requesting to leave early, and that she became very upset, shaking and crying.  Id. at 30.  She stated that Mr. Thomas informed her that if she went home sick, she would need to fill out Family Medical Leave paperwork or she would be disciplined for an attendance problem.  (Docket No. 27 p. 4).  Ms Brady did go home early that day because she was not feeling well, although she testified at an Equal Employment Opportunity Commission ("EEOC") hearing that she was well enough to drive herself home.  (Docket No. 25, Brady Tr. p. 36).

Five days later, Ms Brady made a written FMLA request stemming from this partial absence.  The medical certificate prepared by her physician reported that she would require additional time off of work but did not state how much time or when ("depends on severity of episode; problems can occur at anytime"), and reported that Ms Brady was not presently incapacitated.  (Docket No. 22, Davis Decl., Ex. 3).  The USPS responded to the request by notifying Ms Brady in writing that "not incapacitated" did not satisfy FMLA criteria and that she would need to resubmit a medical certificate which indicates the necessary FMLA criteria if her request was to be approved.  (Docket No. 22, Davis Decl., Ex. 4).  Ms Brady did not resubmit a completed medical certificate.

Also on 27 March 2001, Ms Brady received a warning letter alleging "conduct unbecoming," citing the incident on 22 March 2001 as the reason for the warning.  (Docket No. 22, Brady Dep., Ex. 10).   On 8 June 2001, Ms Brady received a notice of suspension for seven days, citing "failure to follow instructions" and "conduct unbecoming" as the reasons for the suspension.  (Docket No. 22, Zoloty Decl., Ex. 10).

5

In support of the suspension, the letter describes two incidents in which management requested FMLA medical documentation to support Ms Brady's FMLA requests for leave, Ms Brady's refusal to supply the documentation, and Ms Brady's "hostile" responses to management's attempts to comply with the FMLA.  Id.  Ms Brady successfully challenged the warning letter and suspension through the USPS grievance process, and both the letter and suspension (which was never served) were removed from her record on 4 June 2002.  (Docket No. 22, Brady Dep., Ex. G, H).

On 13 June 2002, Ms Brady was late to work due to an episode of hypoglycemia (low blood sugar) and requested FMLA leave as a result.  (Docket No. 22, Brady Dep., Ex. D).  In her medical certificate, Ms Brady's doctor stated that this incident did not cause Ms Brady to become incapacitated and did not require her to miss additional work.  Id.  The USPS responded to the request in writing the next day, notifying Ms Brady that she would need to submit a medical certificate that verified an incapacity which necessitates FMLA leave.  (Docket No. 22, Kobelka Decl., Ex. 1).   Even though Ms Brady did not resubmit the requested medical certificate, the USPS approved her FMLA request for 13 June 2002 only and notified her that further certification would be required if additional FMLA time became necessary.  (Docket No. 22, Kobelka Decl., Ex. 3).

On 29 July 2002, Ms Brady again requested FMLA leave, and the USPS again requested medical certification verifying her incapacity and the estimated amount of time needed for treatment and/or recovery. (Docket No. 22, Kobelka Decl., Ex. 4).  Ms Brady supplied the same medical certificate completed for her June 2002 request and a handwritten letter explaining that she believed the medical certificate she submitted

appropriately supported her FMLA requests.  Id.

On 18 December 2002, Ms Brady had a confrontation with a supervisor, Larry Nekic, and left work before the completion of her shift.  (Docket No. 22, Ex. 9, Brady Dep. pp. 50-59).  Although she did not leave early because of a diabetic episode,[2] she did request FMLA leave for her 18 December partial absence and for additional leave time.  Id.  The USPS again requested medical certification that identified her incapacitation on 18 December and any days thereafter.  (Docket No. 22, Davis Decl., Ex. 6).  On 9 January 2003, Ms Brady wrote a letter to the USPS, explaining her absence: she believed her supervisor had harassed and discriminated against her on 18 December 2002, she was "afraid to return to work" because of the supervisor's behavior, and such fear was having a negative impact on her diabetic condition.  Id.  Ms Brady's letter further asserted that she would not provide any further medical certification to the USPS, stating that it was illegal for the USPS to even request such documentation because she had a pending case with the EEOC regarding the USPS' insistence that Ms Brady file medical documentation to support her FMLA requests.[3]  Id.

On 25 February 2003, the USPS notified Ms Brady in writing that she would be terminated effective 29 March 2003 because she had failed to either return to work or

---

[2]  Ms Brady recounted in her deposition that shortly after her disagreement with Mr. Nekic, she telephoned another supervisor Stan Long at home, requesting to leave early.  Mr. Long instructed her that he could not giver her permission at that time to go home sick unless she wanted to "fill out the form anyway and say it's your diabetes."  Ms Brady informed Mr. Long that she was not requesting to go home early that day because of her diabetes.  (Docket No. 22, Ex. 9, Brady Dep. p. 56).

[3]  Ms Brady filed a complaint with the EEOC five days after the 18 December incident, alleging disability discrimination and retaliation for protected EEOC activity.

file the requested FMLA documentation.  (Docket No. 22, Davis Decl., Ex. 10).  Ms

Brady's termination was ultimately reduced to a long-term suspension without back pay

pursuant to a binding pre-arbitration settlement signed 12 June 2003.  (Docket No. 22,

Davis Decl., Ex. 11).  The agreement further specified that Ms Brady would receive

medical clearance before returning to work, acknowledged that the long-term absence

would not be protected by the FMLA, and agreed that any future requests would be

supported by the documentation required by the USPS and the law.  Id.  Ms Brady

returned to work in July 2003.  (Docket No. 22, Zoloty Decl., Ex. 3).

On 9 April 2004, Ms Brady requested FMLA leave for pregnancy and child birth,

and she submitted a medical certificate prepared by her physician.  (Docket No. 22,

Kobelka Decl., Ex. 6). Ms Brady's request was authorized; she took twelve weeks

FMLA leave and returned to work in July 2004.  Id.  On 5 October 2004, the USPS

notified Ms Brady that she had used her twelve week entitlement of FMLA leave for

2004, and that she would not be entitled to further FMLA leave until January 2005.

(Docket No. 22, Kobelka Decl., Ex. 7).

On 15 October 2004, Ms Brady resigned from her position at the USPS, stating

in her letter of resignation, "I apologize for not providing you with a two-week notice, but

the demands of my family and health must take precedence."  (Docket No. 22, Brady

Dep., Def. Ex. 1).

Ms Brady had filed a complaint against the USPS with the EEOC on 23

December 2002, alleging disability discrimination and retaliation for her former EEOC

activity.  (Docket No. 12, Ex.).  Upon finding that Ms Brady was not discriminated or

retaliated against, the EEOC issued her a right-to-sue letter on 1 October 2004.  Id.  Ms

8

Brady filed an action before this Court on 5 January 2005, alleging the USPS discriminated and retaliated against her on the basis of an actual or perceived disability in violation of the Rehabilitation Act, and alleging the USPS constructively discharged her in violation of the FMLA.  (Docket No. 12).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the motion is properly made and supported as provided in Rule 56(c), the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  It is not enough for the nonmoving party to point to any alleged factual dispute between the parties.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To survive summary judgment, the dispute must involve a genuine issue of material fact; that is, a fact that might affect the outcome of the suit under the governing substantive law.  Id., 477 U.S. at 248.

As summary judgment is a mechanism to dispose of "factually unsupported claims or defenses," Celotex, 477 U.S. at 323-24, the rule is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir. 1989).   In

considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


### III.  LAW AND ANALYSIS

In its motion for summary judgment, the USPS argues that the plaintiff fails to establish a prima facie case of disability discrimination because she is not a person with a disability for purposes of the Rehabilitation Act and because she suffered no adverse action.  (Docket No. 22).  The motion further contends the plaintiff's FMLA claim must fail because it is barred by the statute of limitations, and because Ms Brady was not constructively discharged.  Id.  In her objection to defendant's motion, the plaintiff asserts that diabetes qualifies as a disability under the Rehabilitation Act because a USPS personnel regulation is facially discriminatory against diabetics.  (Docket No. 27).  Her objection further argues that the FMLA claim is meritorious because the USPS violated Ms Brady's FMLA rights by refusing to accept her FMLA leave requests and denies that this claim is time barred.  Id.

Although the Rehabilitation Act and the FMLA both afford protections to employees afflicted with certain disabilities or health ailments, the acts serve different purposes and afford distinct causes of action.  The Rehabilitation Act prohibits covered employers from discriminating against employees on the basis of a disability.  By contrast, the FMLA requires covered employers, including the USPS, to provide certain employees with unpaid leave for medical reasons, for the birth or adoption of a child, and for the care of a close family member with a serious health condition. Although

10

claims brought under the Rehabilitation Act and the FMLA require plaintiffs to satisfy certain prima facie cases, the elements of those prima facie cases are distinct.  The Court will first address Ms Brady's claims raised under the Rehabilitation Act, and then address her FMLA claim.

**A.  Rehabilitation Act Claim**

The dispositive issue in Ms Brady's discrimination and retaliation claim on the basis of a disability is whether she has proffered sufficient facts or evidence to demonstrate that she was disabled within the meaning of the Rehabilitation Act.

"The Rehabilitation Act prohibits the United States Postal Service from discriminating against their employees on the basis of a disability."  DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004) (citing 29 U.S.C. § 794(a)).  In order for a plaintiff to prevail on a disability discrimination claim in the absence of direct evidence, as in this case, she must first establish a prima facie case by showing the following: 1) she is disabled; 2) otherwise qualified for the position, with or without accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1185 (6th Cir. 1996).[4]

An individual is disabled within the meaning of the Rehabilitation Act where she 1) has a physical or mental impairment which substantially limits one or more of her

---

[4] The analyses of claims under the Americans with Disability Act, 42 U.S.C. § 12101 and the Rehabilitation Act are parallel. Monette, 90 F.3d at 1177.

major life activities, 2) has a record of such an impairment, or 3) is regarded as having such an impairment.  29 U.S.C. § 705(20)(B); <u>see</u> <u>also</u> <u>Mahon v. Crowell,</u> 295 F.3d 585, 589 (6th Cir. 2002) (explaining that there is no blanket rule for determining when a claimant is disabled and that such determination is to be made on a case by case basis).  The plaintiff's complaint asserts a disability under the first and third categories. (Docket No. 12 at ¶ 47).

### 1.  Actual Disability

Ms Brady fails to demonstrate that she has an actual physical or mental impairment that substantially limits a major life activity.  "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  45 C.F.R. § 84.3(2)(ii); <u>see</u> <u>also</u> <u>Toyota Motor Mfg., Kentucky, Inc. V. Williams</u>, 534 U.S. 184, 195-97 (2002).  An impairment that is "substantially limiting" is one that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  <u>Williams</u>, 534 U.S. at 198.  A claimant attempting to prove disability status under the Rehabilitation Act must proffer evidence beyond a medical diagnosis by demonstrating that the impairment is substantially limiting in terms of her own experiences.  <u>Id.</u>

Ms Brady is afflicted with type I diabetes, which requires her to receive insulin either through regular injunctions or through a pump.  (Docket No. 25, Brady Tr. pp. 11-12).  Her diabetic condition requires her to closely monitor her diet, physical fitness, and blood sugar level.  <u>Id.</u> at 11.  Additionally, Ms Brady asserts that stress, exercise, heat, work environment, and certain medications can all affect her diabetic condition.  (Docket

12

No. 27 p. 2).

Despite this apparent requirement for strict lifestyle control, Ms Brady submits no evidence demonstrating that her illness substantially limits her in a major life activity as is required by the Rehabilitation Act.  To the contrary, Ms Brady testified that she has maintained an almost perfect attendance record in spite of her diabetes.  (Brady Tr. pp. 18-19; see also Docket No. 27 p. 3 (explaining, "[n]otwithstanding her diabetic condition, she excelled as a postal employee")).  She offers no facts or evidence that her diabetic condition, when treated with a healthy lifestyle and insulin, impairs her ability to walk, see, hear, speak, breath, learn, or work.  See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) (instructing that where a person takes measures to correct or mitigate a physical condition, "the effects of those measures - both positive and negative - must be taken into account when judging whether that person is 'substantially limited' in a major life activity").[5]  Although the Court has no doubt that Ms Brady's diabetic condition imposes a significant inconvenience to her day-to-day lifestyle, there is no evidence or facts offered to the Court that even suggest Ms Brady's diabetes limit her ability to perform any major life activities.  Accordingly, Ms Brady does not have an "actual" disability within the meaning of the Rehabilitation Act.

### 2.  Regarded as Disabled

The USPS did not regard Ms Brady as having an impairment that substantially limited her in a major activity.  An employee is "regarded" as disabled when the

---

[5]  In Sutton, the U.S. Supreme Court held that a job applicant with severe myopia was not disabled for purposes of the ADA because the use of corrective lenses gives the individual a visual acuity of 20/20.  527 U.S. at 488.

employer is mistaken in its belief that the individual has a physical impairment that substantially limits one or more major life activities, or the entity is mistaken in its belief with regard to the severity of an impairment, believing that the individual's non-limiting impairment is substantially limiting. Mahon, 295 F.3d at 592. In both situations, the covered entity must harbor a misconception about the claimant, "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton, 527 U.S. at 489 (noting that these misconceptions often result from stereotypical assumptions that do not truly reflect the individual's ability).

Ms Brady offered no evidence to support her claim that the USPS mistakenly regarded her diabetic condition as substantially limiting her in any major life activity. To the contrary, the thrust of her argument is that the USPS did not appreciate the severity of her diabetes when it allegedly denied her statutorily-afforded FMLA leave. For these reasons, Ms Brady fails to demonstrate that the USPS regarded her as disabled for the purposes of the Rehabilitation Act claim.

As Ms Brady fails to satisfy the first element of the requisite prima facie case, her discrimination claim on the basis of a disability pursuant to the Rehabilitation Act shall be dismissed as a matter of law.

**B.  FMLA Claim** [6]

---

[6] The defendant asserts in its motion for summary judgment that the plaintiff's FMLA claims are barred by the statue of limitations. Because this Court will dismiss Ms Brady's FMLA claims on the merits, it will not consider whether the statute of limitations would otherwise bar her claims.

14

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a serious health condition that makes the employee unable to perform the functions of the position of such employee." Edgar v. JAC Products, Inc., 443 F.3d 501, 506 (6th Cir. 2006) (quoting Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) and 29 U.S.C. § 2612(a)(1)(D), internal quotations omitted).  The Act further permits eligible employees with a serious health condition to take leave intermittently or on a reduced work schedule when medically necessary.  29 U.S.C. § 2611(b).  A serious health condition is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider."  29 U.S.C. § 2611; see also 29 C.F.R. § 825.114.

To take FMLA leave, an employee shall notify her employer of her intent to take such leave either 30 days in advance or "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. §§ 825.302, 825.303.  When an employee requests FMLA leave because of a serious health condition, the employer may require her to provide at the time leave is requested (or within two business days), a medical certificate completed by her health care provider.  29 U.S.C. § 2613; 29 C.F.R. § 825.305(a).  The medical certificate is deemed sufficient if it includes medical facts which describe the employee's serious health condition (within the meaning of the Act); the date on which the condition commenced; the probable duration of the capacity; and, in cases where intermittent leave is requested, the expected duration of the intermittent leave or reduced work schedule.  29 U.S.C. § 2613; 29 C.F.R. §

15

825.306(b).[7]  For employee's with chronic conditions under continuing supervision of a health care provider, the employer may request re-certification every 30 days in connection with an employee's absence, but not if the original certification stated that the duration of incapacity or intermittent leave was expected to be more than 30 days. 29 C.F.R. § 825.308.

Federal regulations distinguish between situations where the employer questions the <u>validity</u> of the employee's medical certification from cases where the medical certification contains <u>insufficient</u> information for the employer to approve FMLA leave.  If an employer questions the validity of an employee's completed medical certificate, the employer's course of action is limited to having a health care professional that represents the employer contact the employee's physician for clarification, or to require the employee to obtain a second opinion at the employer's expense.  29 C.F.R. § 825.307(a).  However, where the medical certification contains insufficient information to render a decision regarding the employee's eligibility for FMLA leave, the employer shall "provide the employee [with] a reasonable opportunity to cure any such deficiency."  29 C.F.R. § 825.305(d).

The Sixth Circuit recognizes two theories under which an employee may seek recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29

---

[7]  The USPS utilizes as its medical certification form, Form WH-380, developed by the Department of Labor as a model medical certificate to be completed by health care professionals.

16

U.S.C. 2615(a)(2)."  Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004).  Because plaintiff's complaint mistakenly alleges claims of retaliation and constructive discharge under § 2615(a)(1) instead of (a)(2) (Docket No. 12 ¶¶ 37-39), this Court will consider her claim under both theories.

### 1.  Interference Claim

The prevalent question in an FMLA interference claim is whether the employer unlawfully interfered with an employee's rights protected by the FMLA.  Ms Brady alleges that the USPS interfered with her FMLA rights by "rejecting" her FMLA paperwork.  (Docket No. 27 pp. 17-18).  The prima facie case Ms Brady must satisfy to prevail on this claim requires a showing of the following: (1) she was a qualified employee under the FMLA; (2) the employer is a covered entity under the Act; (3) she was entitled to FMLA leave; (4) she notified the employer of her intention to take such leave; and (5) the employer denied her the FMLA benefits to which she is entitled. Edgar, 443 F.3d at 501.  In this case, the USPS did not unlawfully deny Ms Brady FMLA benefits to which she is entitled because Ms Brady failed to give the USPS sufficient notice of a serious medical condition that would qualify her for FMLA leave.

"[A]n employer is entitled to rely on a 'negative certification' in denying FMLA leave."  Nawrocki v. United Methodist Retirement Communities, 174 Fed. Appx. 334, 338 (6th Cir. 2006) (quoting Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998)).  In Nawrocki, the plaintiff employee's health care provider submitted a medical certificate that indicated the plaintiff had a serious health condition, but that the condition did not necessitate a reduced work schedule or intermittent leave.  Id. at 338. The Sixth Circuit held that this "negative certification" (i.e. the health ailment was not a

17

"serious health condition" as defined by the FMLA) justified the employer in denying FMLA leave and subsequently terminating the employee for excessive absences.  Id. at 337-38.

Of the six occasions on which Ms Brady requested FMLA leave,[8] the facts

_____

[8]  The Court notes that Ms Brady may have requested FMLA leave on more than six occasions. However, the plaintiff failed to set forth a list or timeline of her FMLA requests and whether such requests were denied.  Accordingly, the following is a synopsis of Ms Brady's six FMLA requests based on the undisputed facts on the Court record:

1.  In January 2001, Ms Brady requested FMLA leave after missing one day of work.  Her request form states that she may require one day off of work, was not presently incapacitated, but that she might require intermittent leave from work depending on her symptoms.  The USPS notified her that her reported condition did not qualify her for FMLA leave and gave her fifteen days to cure the deficiency.  Ms Brady did not resubmit her request.  (Docket No. 22, Davis Decl., Ex. 1).

2.  In March 2001, Ms Brady requested FMLA leave after leaving work early because of a diabetic episode (although Ms Brady was well enough to drive herself home from work that day (Docket No. 25, Brady Tr. p. 36)).  Ms Brady's medical certification stated that she was not presently incapacitated, other than the day she left early, and that she was presently able to perform the functions of her position.  The USPS notified her that her certification was incomplete and gave her fifteen days to cure the deficiency.  Ms Brady did not resubmit her medical certification.  (Docket No. 22, Davis Decl., Ex. 3, 4).

3.  In June 2002, Ms Brady requested FMLA leave after a hypoglycemic episode caused her to be late to work.  Her medical certification stated that her chronic condition did not cause Ms Brady to be incapacitated and would not require her to work intermittently or on a less than full work schedule.  The USPS notified Ms Brady in writing of her incomplete medical certificate.  When Ms Brady did not cure the insufficiency, the USPS approved Ms Brady for FMLA leave for the actual time missed but not for additional time.  (Docket No. 22, Kobelka Decl., Ex. 2,3).

4.  In July 2002, Ms Brady requested FMLA leave.  The USPS requested medical certification.  Ms Brady sent in the same incomplete medical certification from her June 2002 request along with a letter stating her belief that the certification provided adequate information for the USPS to approve her leave.  Ms Brady was afforded fifteen days to cure the incomplete certification, but she did not.  (Docket No. 22, Kobelka Decl., Ex. 3, 4).

5.  In December 2002, Ms Brady requested FMLA leave after leaving work early because of an incident between her and a supervisor.  Ms Brady did not submit a medical certificate for this request, nor did she return to work.  On 25 February 2003, Ms Brady received a notice of termination from the USPS for failure to show up for work or file the requisite supporting documentation for an FMLA leave request.  That letter was later redacted in a pre-arbitration agreement and her termination was reduced to a long-term suspension without pay.  (Docket No. 22, Kobelka Decl., Ex 5; Davis Decl., Ex. 6 - 11).

6.  In April 2004, Ms Brady requested FMLA leave for child birth and postpartum and submitted a medical certificate.  Ms Brady's requested was authorized and she received twelve weeks of FMLA leave that year.  (Docket No. 22, Kobelka Decl., Ex. 6).

18

leading up to the first five requests are remarkably similar.  Ms Brady missed all or part of a work shift because she was ill from a diabetic episode.  She requested FMLA leave after the illness for the work time she already missed plus future intermittent leave.  In her first three requests (see footnote 8), her medical certificates stated that Ms Brady's health condition did not render her incapacitated and that she could perform the functions of her job (Ms Brady did not submit medical certificates for her fourth and fifth FMLA requests).  In response to these FMLA requests containing either "negative certificates" or no medical certification at all, the USPS timely notified Ms Brady that her documentation was incomplete (or absent), lacking any indication of an incapacity or estimated durations of future episodes of incapacity, and then afforded her fifteen days to cure these deficiencies.  She did not do so.

The medical certificates accompanying Ms Brady's FMLA requests did not indicate a serious health condition that rendered her unable to perform her job functions.  Because Ms Brady's medical certificates were incomplete to approve her FMLA requests, the USPS was not only permitted but required to afford her a reasonable time to cure the incomplete certificates.  See  29 U.S.C. § 2613; 29 C.F.R. 825.305(d).  Furthermore, because Ms Brady failed to cure these deficiencies, the USPS lawfully relied on the "negative certification" of her medical certificates in denying her requests for FMLA leave.  See Nawrocki, 174 Fed. Appx. at 338.  For these reasons, Ms Brady fails to satisfy the prima facie elements of an FMLA interference claim.

### 2.  Retaliation Claim

The issue in an FMLA retaliation claim is whether an employer retaliated or

19

discriminated against an employee because the employee invoked her FMLA rights.

The Sixth Circuit employs the burden-shifting approach from <u>McDonnell Douglas Corp.</u>

<u>v. Green</u>, 411 U.S. 792 (1973) for retaliation claims brought under the FMLA.  Hence, a

plaintiff alleging discrimination and/or retaliation bears the initial burden to demonstrate

the following prima facie elements: (1) she notified her employer of her intent to take

FMLA protected leave; (2) she suffered adverse employment action; and (3) there

exists a causal connection between the plaintiff's exercise of her FMLA rights and the

adverse employment action.  <u>Edgar</u>, 443 F.3d at 509.  If the plaintiff satisfies all three

elements, then the burden shifts to the employer to articulate a legitimate,

nondiscriminatory reason for the adverse employment action.  <u>Skrjanc v. Great Lakes</u>

<u>Power Serv. Co.</u>, 272 F.3d 309, 315 (6th Cir. 2001).  If the employer articulates such a

reason, then the burden shifts back to the plaintiff to demonstrate that the reason is

pretextual.  <u>Id.</u>

Constructive discharge is the adverse employment action identified by the

plaintiff in this case.[9]  To demonstrate a constructive discharge, Ms Brady must proffer

evidence that demonstrates that the USPS "deliberately created intolerable working

conditions, as perceived by a reasonable person," and that the USPS created such

conditions with the intention of forcing Ms Brady to quit.  <u>Logan v. Denny's, Inc.</u>, 259

---

[9]  Plaintiff's complaint asserts the following: "Plaintiff subsequently terminated her employment due to the continued harassment and retaliation by the post office and its employees. Defendant refused to accept Plaintiff's paperwork and constructively dismissed her from her employment in violation of 29 U.S.C. § 2615([a])(1)."  (Docket No. 12 ¶¶ 37-38).  Although Ms Brady alleges that the defendant's refusal to accept her FMLA paperwork was a form of adverse employment action, under the two-theory approach set forth by the Sixth Circuit, this allegation is considered a form of interference with the plaintiff's FMLA entitlements.  Accordingly, this Court considered this claim under the theory of entitlement and interferences.

20

F.3d 558, 568-69 (6th Cir. 2001).  "Whether a reasonable person would have felt

compelled to resign depends on the facts of each case, but [the Sixth Circuit]

consider[s] the following factors relevant, singly or in combination: (1) demotion; (2)

reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or

degrading work; (5) reassignment to work under a [different] supervisor; (6) badgering,

harassment, or humiliation by the employer calculated to encourage the employee's

resignation; or (7) offers of early retirement or continued employment on terms less

favorable than the employee's former status."  Id. at 569 (quoting Brown v. Bunge

Corp., 207 F.3d 776, 782 (5th Cir. 2000)).

        In the present case, the plaintiff suffered no adverse action and therefore fails to

satisfy her prima facie case.  Nothing in the record demonstrates that the USPS willfully

or deliberately created intolerable working conditions or that its supervisors acted with

the intent to instigate Ms Brady's resignation.  There is no doubt that Ms Brady and

some of the defendant's supervisors had at times a contentious working relationship,

but Ms Brady fails to point to any working conditions which a reasonable person would

find so intolerable that the environment would compel one to resign.  Ms Brady alleges

that USPS supervisors harassed her by insisting that the vestibule doors remain closed

because she went home ill and further harassed her by insisting that she identify the

anticipated duration of her requested FMLA leave; considering these allegations in a

light most favorable to the plaintiff, these acts can hardly be construed as intolerable

working conditions or as harassment calculated to encourage her resignation.  To the

contrary, the latter allegation is nothing more than an act of compliance with the USPS's

personnel policy and practice and with the FMLA.  In the absence of any evidence or facts which indicate the USPS deliberately created intolerable working conditions or acted with the intent to force her resignation, Ms Brady fails to demonstrate she suffered any adverse action and, therefore, fails to satisfy the prima facie case of an FMLA retaliation claim.

In sum, the plaintiff fails to satisfy her burden for either an interference or retaliation claim under the FMLA because she produced insufficient certification of a serious health condition that qualified her for FMLA leave and because she suffered no adverse employment action within the meaning of the FMLA.  As a result, the Court will dismiss her FMLA claim as a matter of law.


## IV.  CONCLUSION

The Court finds there is no genuine issue as to any material fact in this case. The plaintiff failed to meet her burden in demonstrating that she was disabled under the meaning of the Rehabilitation Act, and further failed to satisfy the prima facie case to demonstrate that the USPS either interfered with her exercise of FMLA rights or retaliated against her for exercising those rights.


The Court therefore grants defendant USPS's motion for summary judgment, and dismisses as a matter of law pursuant to Fed. R. Civ. P. 56(c) all of the plaintiff's claims in this action.

The plaintiff's motion to strike is denied, and the defendant's motion to dismiss is denied as moot.

IT IS SO ORDERED.

_____/s/ Lesley Wells_____
UNITED STATES DISTRICT JUDGE

Date:___7 February 2007____

23